470 So.2d 596 (1985)
STATE of Louisiana
v.
Janice A. PAUTARD.
No. 84 KA 1289.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*597 Ossie Brown, Dist. Atty. by Don Johnson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Mike Mitchell, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
Defendant, Janice A. Pautard, a/k/a Janice Rigsby, was charged by bill of information with possession of Diazepam (Valium), a violation of LSA-R.S. 40:969(C). This charge stems from an incident which occurred in March of 1983 in Baton Rouge, Louisiana. Defendant pled not guilty and subsequently filed a motion for discovery and a motion for a preliminary examination. A hearing was held February 13, 1984, on defendant's motions and on a motion to suppress filed by co-defendant Johnny *598 Duncan. The motion to suppress was joined in by defendant.[1] The trial judge ordered the state to answer the motion for discovery, ruled there was probable cause to hold the accused on the charge, and denied the motion to suppress. Subsequently, defendant changed her plea to guilty, reserving her right to appeal the denial of the motion. The trial judge sentenced defendant to three years at hard labor. This was suspended and defendant was placed on three years supervised probation with the following conditions: (1) that she avoid all contact with co-defendant; (2) that she remain employed at all times; (3) that she attend a mental health clinic; (4) that she participate in any treatment recommended by the clinic; (5) that she submit to periodic urinalysis tests at her own expense and provide the results to the Probation Office; and (6) that she pay $250.00 to the Public Defender's Office. Defendant appeals, alleging two assignments of error:
1. The trial court erred when it denied defense motion to suppress physical evidence obtained without probable cause.
2. The trial court erred when it imposed an excessive sentence and failed to follow the guidelines of LSA-C.Cr.P. art. 894.1.
We affirm.
On March 26, 1983, at 2:00 a.m., Baton Rouge Police Sergeant Philip Hilbun was on patrol when he observed defendant and another white subject in an automobile parked at a closed service station near the intersection of 38th Street and Cain Street, a known drug-trafficking area according to Hilbun.[2]
He concealed his patrol car and then observed the vehicle from a distance of 150-200 feet. An unidentified black male walked up to the driver's side of the vehicle and remained there for several minutes. Immediately after the black male walked away from the vehicle, it began to speed away. At about this time, the subjects observed Hilbun. Believing that a drug transaction had taken place, Hilbun signaled them to stop, but they drove on. He eventually halted them several blocks away. The driver was identified as Johnny Duncan and the passenger as Janice Pautard. A search revealed three[3] identical tablets later analyzed as Diazepam (Valium), a schedule IV controlled dangerous substance under LSA-R.S. 40:964. Defendant and Duncan were charged with possession of Diazepam.

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, defendant contends the trial court erred when it denied defendant's motion to suppress the Diazepam tablets.
While attempting to halt defendant's vehicle, Officer Hilbun observed defendant putting something in her mouth which Hilbun feared was contraband. After stopping the vehicle, Hilbun obtained Duncan's driver's license and while standing by the automobile, detected the odor of marijuana smoke. By this time, Officer Terry Wilson had arrived in a back-up police unit. Each of the officers separately advised the subjects of their Miranda rights. Hilbun testified that "we made sure that they absolutely understood what we were looking for and what we were doing." The subjects indicated they understood and did not want an attorney. Defendant then stated she and Duncan had smoked marijuana earlier in the evening. Additionally, Hilbun *599 observed a large amount of money in Duncan's shirt pocket. Hilbun remarked to Duncan that the money would be safer in his billfold, to which Duncan replied that he wanted to keep it in a convenient location because it was not going to be there long. Defendant then stated that she and Duncan had bought some pills in Larry's PoBoy at West Brookstown.
The subjects then were asked by Hilbun for their consent to be searched for narcotics. They were advised that they did not have to give this consent, but they gave it anyway. Hilbun discovered one Diazepam tablet in Duncan's boot and Officer Wilson found two in defendant's purse. Defendant stated they had purchased the tablets earlier that night at a location on Prescott Drive. She further stated they parked at the service station to buy narcotics, but the deal did not develop.
Defendant claims the initial stop by Officer Hilbun was made without probable cause and therefore the after-the-fact seizure was illegal. The State argues that Hilbun conducted an investigatory stop under LSA-C.Cr.P. art. 215.1 because he reasonably suspected that a drug transaction had taken place, and that in any event, the subsequent search was made with consent.
LSA-C.Cr.P. art. 215.1 permits law enforcement officers to make investigatory stops when they "reasonably suspect" the person has committed a crime. Although "reasonable cause" has been held to be something less than the standard of "probable cause," the detaining officer must still have knowledge of facts which imply criminal behavior in order to justify interference with an individual's freedom. State v. Hogan, 403 So.2d 1210 (La.1981); State v. Montgomery, 432 So.2d 340 (La.App. 1st Cir.1983).
Hilbun was an experienced police officer, having served thirteen years with the Baton Rouge Police Department at the time of the arrest. At least six of these years were spent patrolling the area of Baton Rouge in question. He was quite familiar with 38th and Cain, and knew of its infamous reputation as a drug-trafficking area. Therefore, at 2:00 in the morning, when he observed an unidentified male approach two persons in a vehicle parked at a closed service station in a notorious drug-trafficking area, he was not unreasonable in suspecting that a drug transaction had taken place. Hence, his stop of the vehicle was in compliance with LSA-C. Cr.P. art. 215.1.
Once the investigatory stop was made, the detection of marijuana smoke coupled with the suspicion that defendant had ingested what the officers believed was contraband, gave probable cause for an arrest. After the arrest defendants were given their Miranda rights including the right to remain silent. However, after these rights were given several inculpatory statements were made. It was only after these inculpatory statements that the officers asked for and received the consent to search for narcotics.
In the absence of a warrant, a search conducted pursuant to a valid consent is constitutionally permissible, but the burden is upon the state to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge. This factual determination is to be given great weight on review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Smith, 433 So.2d 688 (La.1983).
Officers Hilbun and Wilson testified that defendant voluntarily consented to the search. Defendant does not allege that her consent was forced or coerced and we conclude it was not. Thus, even if the stop was without "reasonable cause", the subsequent voluntary consent rendered the search and seizure constitutionally valid. State v. Linkletter, 345 So.2d 452 (La. 1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978); State v. Montgomery, supra. We thus conclude the trial court correctly overruled defendant's motion to suppress this evidence.

*600 ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant contends the trial court imposed an excessive sentence and failed to follow the guidelines of LSA-C.Cr.P. art. 894.1. Defendant's appellate counsel has split the discussion into two subparts, to wit:
I. The trial court erred when it failed to follow the mandatory sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1.
II. Appellant urges that the court erred when it allowed a substitution of judges without showing unavoidable circumstances.
The portion of this assignment of error dealing with allegations of an excessive sentence is not briefed and is therefore considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. In addition, the error set forth in subpart II above was not embodied in a formal assignment of error. Defendant's contention first appears in her brief. Hence, this allegation of error is not properly before us on appeal. LSA-C.Cr.P. arts. 844 and 920; State v. Spears, 350 So.2d 603 (La.1977).
Turning to the court's alleged failure to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1, we observe that the court need not recite the entire checklist found in the article. However, the record must reflect that the judge adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984).
Contrary to defendant's assertion, the record clearly shows that the trial court adequately considered the guidelines of LSA-C.Cr.P. 894.1. Specifically, the trial judge noted that this was defendant's first felony offense. The trial judge expressed concern over defendant's denial of a drug problem when the pre-sentence investigation revealed otherwise. The trial court further noted that defendant stated she was employed when in fact she was not. Finally, the trial judge stated that within the probationary period, he hoped defendant would learn to face her problems and would become a useful member of society.
The trial judge adequately satisfied the statutory criteria set forth in LSA-C.Cr.P. art. 894.1 and we find no merit in this assignment of error.
For the foregoing reason the conviction and sentence are affirmed.
AFFIRM.
NOTES
[1] Defendant did not file a motion to suppress and there is no written indication on co-defendant Duncan's motion that defendant joined in that motion. The only indication that defendant did join appears in the minute entry for February 13, 1984, wherein the following appears: "The Motion to Suppress filed herein by [Duncan's retained counsel], was joined in by [the Public Defender representing defendant]." Nevertheless, we will treat this matter as if defendant actually filed a motion to suppress.
[2] Officer Hilbun testified that the local residents refer to this location as "the shooting gallery."
[3] There is a discrepancy in the number of pills the Louisiana State Police Crime Laboratory eventually examined (two) and the number of pills the investigating officers testified were found on the defendants (three).